(Nos. 78-CC-1659 *et al.*—

Norma J. Comer *et al.*, Claimants, *v.* The State of Illinois, Respondent.

*Opinion filed February 13, 1981.*

Roe, C. J.

These claims have been grouped together by the Court for the purpose of this opinion only and are not consolidated except where otherwise noted. Although there may be certain distinguishing characteristics among each group, the issues of law presented at this time and the factual circumstances initially giving rise to each claim are essentially the same in all of the claims.

A motion to dismiss has been filed in each of the claims at various points in time. Several of the cases had been on general continuance status or had motions for general continuance pending. By our Order of October 30, 1980, all of the continued cases were restored to active calendar and all pending motions for continuances were denied. Those Claimants were granted a period of time within which to object to the motions to dismiss and the Respondent was likewise granted time to reply to any objections. The other Claimants have not had their cases

continued or continuance motions pending and have had a considerable amount of time within which to object to the motions to dismiss. Very few objections were ever filed, but the Court has carefully examined each one.

All of the claims are for retroactive compensation of $40.00 per month ($20.00 per pay period) for fiscal year 1978 pursuant to Article XXXIII, Section 4 of Collective Bargaining Agreement RC-121. This contract was entered in and became effective between the State of Illinois and the American Federation of State, County and Municipal Employees (hereinafter referred to as "AFSCME") on July 1, 1977, to run for two years up to and including June 30, 1979. The pertinent provision of the contract reads as follows:

"Section 4. Increases Based on Revenues

All employees in the bargaining unit shall receive a lump sum payment of $20,00 per month for each $10 million "excess" of actual revenues over projections as determined under Section 3, up to a maximum of $50.00 per month (a maximum payment of $600.00 for the year).

Any such payment shall be applied retroactively to all employees for all time paid during Fiscal Year 1978, and the monthly increase shall be added to the base rates for all classifications and steps set out in Appendix A, effective July 1, 1978. Employees not on the active payroll for the full 12 months of FY 1978 shall be entitled to the lump sum retroactive pay on a pro-rate basis. Any employee who has voluntarily quit or been discharged during FY 1978 will be required to make claim for retroactive payments due within 60 days of the end of the Fiscal Year to the Employer."

At the close of Fiscal Year 1978 a dispute arose between the State of Illinois (Bureau of the Budget) and AFSCME officials as to exactly how much money, if any, the State had by way of "excess" in actual revenues over projections as determined under Section 3 of the contract. Section 3 provides as follows:

"Section 3. Revenue Computation

As soon as data are available for Fiscal Year 1978, the parties shall meet to examine and compute the "excess" if any, of total actual receipts into the General Funds, as compared to the total projected receipts into the General Funds, as these are defined in the Memorandum of Agreement between the parties on this subject.

Should a dispute arise between the parties it shall be settled as set forth in Section 14 of this Article."

Regardless of what the parties contracted for, it is a fundamental constitutional requirement in Illinois that the General Assembly by law shall make appropriations for all expenditures of public funds by the State. Furthermore, appropriations for a fiscal year cannot exceed funds estimated by the General Assembly to be available during that year. Therefore, unless there were already sufficient funds appropriated to cover the expenditure contemplated in the contract a new appropriation would be necessary.

There is nothing in the record to indicate sufficient appropriations were already available. However, in anticipation of the potential increases a bill was introduced in the General Assembly to appropriate funds therefor. This bill, H.B. 3237, was introduced on April 14, 1978, and essentially provided as follows:

"Section 1. The following sums, or so much thereof as may be necessary, respectively, are appropriated to the State Comptroller from the funds designated, for personal services and related employer obligations and employees and agencies under the Personnel Code which employ persons eligible for salary increases on account of actual receipts into the general funds for fiscal year 1978 in excess of the amount of projected receipts into those funds for that year, as determined by the Bureau of the Budget, which sums shall be transferred by the State Comptroller to the necessary line items of the various agencies in their fiscal year 1978 appropriations upon receipt of a certified list of eligible employees from the Bureau of the Budget."

Following this introductory portion of the bill was a list of funds out of which certain amounts were appropriated subject to the condition precedent that the Bureau of the Budget determined that a surplus existed. Section 2 of the bill provided as follows:

"Section 2. This act takes effect June 30, 1978, and if not signed into law until after that date shall be retroactive to June 30, 1978."

The matter was brought up in budget hearings before the legislature prior to the end of fiscal year 1978. At this time the Bureau of the Budget advised the

legislature that there would be no "excess." In contrast, AFSCME claimed there would be a substantial excess and advised the legislature of its position in the same hearings.

Upon this background, H.B 3237 was passed by both Houses, and sent to the Governor who signed the bill and it became P.A. 80-1206 on June 30, 1978, differing in content from the way it was when introduced only with respect to dollar amounts.

The Bureau of the Budget determined that the total actual receipts into the General Funds did not exceed the total projected receipts. In fact the Bureau of the Budget found a deficit of approximately $37 million dollars. According to the plain language of the law which would have appropriated the money for the payments the matter would have ended at that point. However, AFSCME disagreed and, relying on their contract, the parties submitted the problem to an arbitrator. Pursuant to the last paragraph of Section 3 of the contract, set out above, the parties turned to Section 14 of the same Article which provides as follows:

"Section 14. Resolution of Disputes

In the event of any disputes over the interpretation, application or implementation of Section 2 through 7 and 10 of this Article and Memorandum of Understanding related thereto such disputes shall be submitted to Eric J. Schmerz as arbitrator, or to another mutually acceptable arbitrator, who shall be selected in accordance with the grievance procedure beginning at Step 4(b), for final and binding decision."

The arbitrator ruled that the State had received sufficient revenues in excess of those projected to make a lump sum payment equivalent to $40.00 per month retroactive salary increase. Qualifying employees who for one reason or another left State employment during the fiscal year 1978 or otherwise did not receive the payment. These Claimants are apparently relying on the last two sentences of the last paragraph of Section 4, Article XXXIII which reads as follows:

"Employees not on the active payroll for the full twelve months of FY 1978 shall be entitled to lump sum retroactive payment on a pro rata basis. Any employee who has voluntarily quit or been discharged during FY 78 will be required to make claim for retroactive payments due within 60 days of the end of the fiscal year to the employer."

All of these cases were filed as "lapsed appropriation" type claims on the standard forms. The law in such cases, simply stated, is that when the appropriation from which a claim should have been paid has lapsed, suit is brought in the Court of Claims, and the Court will enter an award for the amount due the Claimant. The basic issue therefore is whether or not the appropriation from which these claims should have been paid has lapsed.

We begin the analysis with an examination of the appropriation. It is fundamental that there be sufficient appropriated funds that lapse from which payment could have been made. If this Court were to grant an award where insufficient funds lapsed then we would in effect be appropriating State funds ourselves. This would be beyond our jurisdiction because, as we pointed out above, the Illinois constitution expressly and exclusively places that responsibility with the General Assembly. The bill potentially appropriating the funds for payment of the increases contemplated in the contract, H.B. 3237, was signed by the Governor and thus became law. This law was enacted following budget hearings wherein the legislature was advised of the conflict of opinion as to the availability of excess receipts over projections. Thus the legislature was aware that there might be a conflict of opinion when the fiscal year came to a close. Nevertheless they made the appropriation contingent upon the finding of an "excess" by the Bureau of the Budget *only*. No mention was made of AFSCME or an arbitration proceeding. This is the plain meaning of the language contained in the law.

Therefore, the only way that there could have been

funds appropriated to pay the salary increases (and the only way sufficient funds from which the salary increases could have been paid could have lapsed) was if the Bureau of the Budget found there to have been an "excess." The Bureau of the Budget in fact found there to have been no "excess." The basic issue set forth above then becomes: Inasmuch as the law potentially appropriating the money from which the payments were to have been made expressly made the appropriation contingent upon a finding by the Bureau of the Budget that there was an "excess" of receipts over projection, what were the effects of the Bureau's finding of no "excess" and subsequent acquiesence in submission of the matter to the arbitrator?

Based upon a plain reading of the appropriation law and the fact that the Bureau found no "excess" it is clear that there was in reality no appropriation made to pay the salary increases, the condition precedent to the existence of the appropriation having failed. It follows that no appropriation then lapsed.

However, despite the Bureau's initial determination there is no reason stated in Respondent's motions to dismiss or anywhere else in the record which would prevent the Bureau from changing its position. The circumstances following the initial determination by the Bureau therefore become relevant as indicia of whether or not the Bureau ever took a position different from its initial one.

After the Bureau found there to have been no "excess" AFSCME disagreed and asserted its alleged rights under the collective bargaining agreement for binding arbitration. The result of the arbitration was a finding by the arbitrator that there were sufficient "excess" receipts to pay eligible employees a lump sum

salary increase equivalent to $40.00 per month for each month of employment.

Although the arbitrator's decision was purported to have been binding under the terms of the contract, it legally had no effect whatsoever with respect to the rights of the employees to receive any payments because of the language of the appropriation law. This Court has consistently held that, in accordance with the basic principles of contract law, where a provision of a contract is in conflict with the law that provision is null and void and will not be enforced in this Court. In the case at bar the provision of the contract calling for binding arbitration is in conflict with the appropriation law. That law provided that the determination of the existence of any "excess" was to be made by the Bureau of the Budget. Any contractual provision otherwise therefore has no effect. Moreover, there is nothing in the record before us to indicate that the Bureau changed its initial position by ratifying the arbitrator's decision regardless of its legal effect.

The only exception commonly recognized by this Court to the principle that where insufficient funds or no funds lapsed from which payment of the claim would have been made the claim is denied is where the expenditure is expressly required by law. It is quite clear from the discussion above that this exception is inapplicable in these cases.

In conclusion we find that no appropriation lapsed from which these claims would have been paid. It is therefore ordered that these claims be, and hereby are, denied.